UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Leroy R. Montgomery,** | ) | Civil Action No.:_____ |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Experian Information Solutions, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Leroy R. Montgomery, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Leroy R. Montgomery, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.   Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.  Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.   Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.   Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14.   The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's Experian credit file; failed to reinvestigate Plaintiff's disputes; and failed to block fraudulent information after receipt of a police report.  Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. On December 15, 2022, Plaintiff went to his bank, Palmetto First Federal Credit Union, to find out his credit score. On occasion, Plaintiff would go to his bank for the sole purpose of checking his credit score as he was trying to improve his credit in order to be in a position to buy a home. The bank representative informed Plaintiff his credit score had dropped tremendously and asked if he had taken out any credit cards. Plaintiff was shocked to hear this information because he did not use, own, nor had he even ever applied for any credit cards.

16. The Palmetto First Federal Credit Union Infile Credit Report dated December 15, 2022, showed a derogatory Capital One Account reporting as 120 days past due, and a First Premier Account reporting as a charge-off. Neither of these accounts were opened by Plaintiff.

17. Palmetto First Federal Credit Union provided Plaintiff a copy of the Infile Credit Report, phone numbers for both Capital One and First Premier, and recommended that he contact the credit reporting agencies to notify them he had been the victim of fraud.

18. Thereafter, Plaintiff called Defendant to dispute the two fraudulent accounts reporting on the Infile Credit Report and also requested a copy of his Experian credit report.

19. On December 15, 2022, Defendant sent Plaintiff a letter regarding "Remedying the Effects of Identity Theft."

20. On January 3, 2023, Defendant sent Plaintiff its Dispute Results following Plaintiff's dispute. The Capital One account, #517805868139****, remained on his credit report as a charged-off account, with $1,107 written off and $1,107 past due. The Premier Bkcrd/First

Premier, account #517800694164, also remained on his credit report as a charged off account with $601 written off and $601 as past due. Upon review of his Experian credit report, Plaintiff learned of a third fraudulent account, The First Phase/TBOM, account #426679000173, which was reporting as a charged off account, with $1,005 written off and $1,005 past due. In addition, Plaintiff learned of numerous fraudulent hard inquiries by JPMCB Card and AmEx.

21. On or about February 13, 2023, Plaintiff received a letter from Fairway Independent Mortgage Corp stating his Experian credit score was 540.

22. On or about February 27, 2023, Defendant sent Plaintiff a letter stating it had recently received a request that included Plaintiff's information, but it did not appear that Plaintiff sent it to Defendant.

23. On or about February 1, 2023, Plaintiff called the Consumer Financial Protection Bureau ("CFPB") to report the inaccurate accounts reporting on his credit reports. Thereafter, on February 2, 2023, the CFPB sent Plaintiff a letter stating that he would need to either file a complaint online or by phone. Included with the letter was a form complaint which Plaintiff completed and returned to the CFPB.

24. On or about March 10, 2023, Fairway Independent Mortgage Corporation sent a letter to Plaintiff stating his mortgage loan application was denied based on his Experian credit score and the number of recent inquiries on his consumer report.

25. The mortgage company recommended Plaintiff hire a company called The Credit Guy to help him fix his credit, which Plaintiff did.

26. On April 4, 2023, Plaintiff filed a police report with the Florence County Sheriff's

Office concerning credit cards that had been taken out in his name for which he did not apply.

27. On or about June 12, 2023, Defendant sent Plaintiff a letter stating it had recently received a request that included Plaintiff's information, but it didn't appear that the request was sent directly by Plaintiff.

28. On or about July 25, 2023, Defendant sent Plaintiff a letter stating it had recently received a request that included Plaintiff's information, but it didn't appear that the request was sent directly by Plaintiff.

29. In August, Plaintiff cancelled all services of The Credit Guy because his credit report was still not fixed. Thereafter, he called Defendant to put a credit freeze on his Experian credit report.

30. On or about August 28, 2023, Defendant sent Plaintiff a letter stating it had placed a security freeze on Plaintiff's Experian credit report.

31. On or about August 31, 2023, Plaintiff received a letter from First Premier Bank concerning credit card account ending 8430. In its letter, First Premier Bank stated it had completed its investigation and had determined Plaintiff was not responsible for the disputed account and had therefore sent notification to the consumer reporting agencies, including Experian, to remove the account from Plaintiff's credit history.

32. On or about February 8, 2024, Plaintiff obtained a copy of his Experian credit report online which revealed four fraudulent accounts, six unauthorized hard inquires, two incorrect addresses, and a social security number variation were all reporting as belonging to Plaintiff.

6

33. On or about February 27, 2024, Plaintiff sent a dispute letter to Defendant ("First Dispute Letter") stating that in April 2023 he discovered fraudulent accounts had been opened in his name without his knowledge or permission. Specifically, Plaintiff disputed: Capital One Bank Account #517805xxxx, Capital One Bank Account #517805xxxx, Credit One Bank Account #444796xxxxx, and First Phase/TBOM Account #426679xxxxx. In addition, Plaintiff disputed hard inquiries for Kubota Credit Corporation, Xactus-CP/Fairway Inde, JPMCH-Card Services, and AMEX, as Plaintiff did not apply for credit from any of those entities. Plaintiff also listed two addresses that did not belong to him. Plaintiff requested Defendant remove these items so his credit report would be correct. Plaintiff also provided his Social Security number, his date of birth, and his address in his letter to Defendant.

34. Defendant received Plaintiff's dispute on March 1, 2024.

35. On or about March 13, 2024, Plaintiff received a letter from Credit One Bank for account number ending in 2433. In its letter, Credit One Bank stated that after its investigation, it had found that Plaintiff was "not responsible for any previous or further balance incurred on this account," and had submitted a request to remove the tradeline from the consumer reporting agencies, including Experian.

36. On or about March 27, 2024, Plaintiff received Defendant's Dispute Results stating that two of the disputed accounts had been deleted and two of the disputed accounts remained. Specifically, the Capital One Bank Account #517805868139**** was verified as accurate and updated. Accordingly, Defendant continued to report that account as belonging to Plaintiff. The First Phase/TBOM Account #42669000173 was also verified

as accurate, and therefore, Defendant continued reporting the account as belonging to Plaintiff.  The Capital One Bank Account #517805937326xxx and the Credit One Bank Account #444796265547xxx were both deleted by the furnishers. Defendant also deleted one of the disputed addresses, but the other disputed address remained.

37.     On or about April 12, 2024, Plaintiff sent a second dispute letter to Defendant ("Second Dispute Letter"), wherein he stated he had received Defendant's Dispute Results, and the fraudulently opened Capital One Bank and First Phase/TBOM accounts were still reporting.  Plaintiff also informed Defendant an address that was not his was still reporting. With his Second Dispute Letter, Plaintiff included a copy of the police report he filed regarding the theft of his identity.

38.     Defendant received Plaintiff's Second Dispute Letter and police report on April 19, 2024.

39.     On or about May 15, 2024, Defendant sent Plaintiff the results of its investigation into his dispute.  The Capital One Account #517805868139**** was again verified as accurate and thus, remained on Plaintiff's credit report.  The First Phase/TBOM Account and inaccurate address were finally deleted from Plaintiff's credit report.

40.     On or about June 10, 2024, Plaintiff sent a third dispute letter to Defendant ("Third Dispute Letter"), wherein he stated he had received Defendant's Dispute Results, and the fraudulent Capital One Bank Account was still reporting and needed to be removed. Plaintiff again provided a copy of the police report he filed regarding the theft of his identity so the fraudulent account would be removed.  Plaintiff also disputed an address and phone number which did not belong to him and needed to be removed.  Finally, Plaintiff disputed

any social security numbers not ending in 6065 and requested they be removed from his credit report.

41.  Defendant received Plaintiff's Third Dispute Letter and police report on June 14, 2024.

42.  On or about July 9, 2024, Defendant sent Plaintiff the Dispute Results (Report #3112-5793-83) of its investigation into his dispute   The Capital One Account #517805868139… was again verified and updated.  Accordingly, despite receipt of Plaintiff's police report, Defendant continued reporting the fraudulent account as belonging to Plaintiff.  Defendant did not investigate the disputed address or social security number variations, and both remained on Plaintiff's credit report.

43.  On or about July 9, 2024, Defendant sent Plaintiff the Dispute Results (Report #1099-5642-85) of its investigation into his dispute.  The Capital One Account #517805868139… was again verified and updated.  Accordingly, despite receipt of Plaintiff's police report, Defendant continued reporting the fraudulent account as belonging to Plaintiff.  Defendant did not investigate the disputed address or social security number variations, and both remained on Plaintiff's credit report.

44.  On or about July 9, 2024, Defendant sent Plaintiff a letter (Report #3112-5793-83) stating that some information previously blocked had been reinserted onto Plaintiff's personal credit report.  Specifically, Defendant stated that Plaintiff's request to block was either based on a material misrepresentation, he had agreed in writing that the information blocked was in error, or that Plaintiff knowingly obtained possession of goods, services, or moneys as a result of the blocked transactions.

45. On or about July 9, 2024, Defendant sent Plaintiff a letter (Report #1099-5642-85) stating that some information previously blocked had been reinserted onto Plaintiff's personal credit report. Specifically, Defendant stated that Plaintiff's request to block was either based on a material misrepresentation, he had agreed in writing that the information blocked was in error, or that Plaintiff knowingly obtained possession of goods, services, or moneys as a result of the blocked transactions.

46. Defendant did not inform Plaintiff in either of these letters what information was reinserted onto his credit report.

47. On or about August 22, 2024, Plaintiff sent Defendant a fourth dispute letter ("Fourth Dispute Letter"), wherein he stated he had received two Experian Dispute Results, both dated July 9, 2024, in which he was unable to tell a difference between the two, but both continued to wrongfully report the Capital One Bank Account as belonging to Plaintiff. Plaintiff again disputed the Capital One Bank Account as a fraudulent account and enclosed a third copy of the filed police report. Plaintiff also again disputed an address that did not belong to him. Finally, Plaintiff requested that all Social Security numbers not ending in 6065 be removed from his credit report.

48. Defendant received Plaintiff Fourth Dispute Letter on August 27, 2024, but never responded in any way to Plaintiff.

49. To date, Defendant continues to refuse to remove the fraudulent Capital One Bank Account from Plaintiff's Experian credit file and continues to incorrectly report the account as belonging to Plaintiff. Defendant also continues to report an incorrect address and social security numbers which do not belong to Plaintiff.

50.     Defendant failed to make a reasonable investigation into Plaintiff's disputes.

51.     Upon receipt of the ACDV responses, Defendant simply accepted the furnisher's verifications of the accounts and did not undertake to perform any investigation of its own.

52.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

53.     If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

54.     Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

55. The Plaintiff adopts the averments and allegations of paragraphs 15 through 54 hereinbefore as if fully set forth herein.

56. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

57. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

58. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, lost time, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses. Additionally, the damage to Plaintiff's credit score precluded him from seeking further credit opportunities. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which,

but for the acts and omissions of Defendant alleged herein, would not have been necessary.

60.     Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

61.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 60 hereinbefore as if fully set forth herein.

62.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

63.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

64.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

65.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, lost time, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses. Additionally, the damage to Plaintiff's credit score precluded him from seeking further

credit opportunities. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

66.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

67.     In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

68.     Plaintiff is entitled to his attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.     For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501

(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223